# EXHIBIT B

1              IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE EASTERN DISTRICT OF TEXAS
2                       SHERMAN DIVISION

3

4  IN RE:                )  BK. NO:  24-42950-BTR

5                        )

6  JOSEPH ANTHONY DOWDALL )

7      D E B T O R.      )

8

9

10           *   *   *   *   *   *   *   *   *   *

11               TRANSCRIPT OF PROCEEDINGS

12           *   *   *   *   *   *   *   *   *   *

13

14

15

16

17

18

19

20     BE IT REMEMBERED, that on the 20th day of May, 2025,

21  before the HONORABLE BRENDA T. RHOADES, United States

22  Bankruptcy Judge at Plano, Texas, the above styled and

23  numbered cause came on for hearing, and the following

24  constitutes the transcript of such proceedings as hereinafter

25  set forth:


             CINDY SUMNER, CSR (214) 802-7196

        1                 <u>P R O C E E D I N G S</u>

        2              COURTROOM DEPUTY:  Number 2, Joseph Anthony

        3    Dowdall, 24-42950.  Creditor MMWKM's opposed motion to extend

        4    time to file objections to discharge.

        5              THE COURT:  Okay.  Appearances.

        6              MR. YARBOROUGH:  Good morning, Judge.  My name

        7    is Patrick Yarborough.  I'm here on behalf of creditor, MMWKM

        8    Advisors, LLC, the movant.

        9              THE COURT:  Okay.

       10              MR. PRONSKE:  Good morning, Your Honor.

       11    Gerrit Pronske for the debtor.

       12              THE COURT:  All right.  It's your motion.  You

       13    may proceed, sir.

       14              MR. YARBOROUGH:  Thank you, Your Honor.

       15         Just so you know, in the last week there's been a lot

       16    of action in the case, and so I filed a motion -- I filed a

       17    reply brief this morning to apprise the Court of the latest.

       18         Have you had a chance yet to review that, Your Honor?

       19              THE COURT:  Well, I know you filed a brief.  I

       20    haven't reviewed it in detail.

       21              MR. YARBOROUGH:  Okay.

       22              THE COURT:  But I've reviewed it briefly.

       23              MR. YARBOROUGH:  As long as you've reviewed it

       24    briefly, that's more than enough.  Thank you very much.  I

       25    appreciate your taking a look at that.


                    CINDY SUMNER, CSR (214) 802-7196

1      So basically, Judge, the reason we're here is because
2  there were some bombshell new developments that stemmed from
3  the Meeting of Creditors on April 4, 2025.  You asked a
4  lawyer who was presenting earlier whether he was a bankruptcy
5  lawyer.  I confess, I'm not typically a bankruptcy lawyer.
6  This is actually my first hearing in bankruptcy court, Your
7  Honor.  I've participated in Meetings of Creditors, but this
8  is my first hearing.  So bear with me as far as some of the
9  finer points of procedure.
10      But that said, at the April 4th, 2025 Meeting of
11  Creditors, we confirmed that the debtor is continuing to pay
12  his so-called wages into his wife's bank account.  He has
13  also confirmed that he filed a tax return, "inadvertently".
14  And he understated the amount of the refund he was entitled
15  to.  And it also appears that that refund may not have gone
16  into the estate's bank account, as it should have.  That
17  said, that may be contested.  That's a matter for the
18  discharge proceeding.
19      But that said, you know, next we also found out just on
20  May 14th, 2025 that the debtor did not --
21          THE COURT:  Was it May 4th or May 14th?
22          MR. YARBOROUGH:  Excuse me.  The hearing was
23  on April 4th.  And on May 14th, last week -- this is some of
24  the material that I apprised the Court of in my reply brief
25  we filed this morning.

1    On May 14th, 2025 the so-called separate property

2 agreement that Mr. Dowdall referenced in the April 4th, 2025

3 hearing turned out not to be titled that.  It turned out to

4 be a very different document called a marital property

5 agreement, which was entered about a month before the

6 underlying case that creditor, MMWKM, won back in 2023.  And

7 not only did that marital property agreement list property of

8 the debtor, it also -- it actually exchanged property and

9 defined property as separate property that was previously

10 community property.  I found that out last week.  So this is

11 literally three weeks after the 727 deadline.  Which, by the

12 way, has been extended for the Trustee, but not for

13 creditors.

14    In any event, on May 14th we got this separate

15 property, so-called separate property agreement.  It turns

16 out it wasn't that at all.  It was called a marital property

17 agreement.  I asked debtor's counsel why that wasn't produced

18 in the underlying litigation, as I detailed in my reply

19 brief.  And debtor's counsel said, well, you didn't ask for a

20 marital property agreement.  Well, I asked for all documents,

21 as you can see in Exhibit 4 to my -- excuse me, Exhibit 5 to

22 my reply brief, which is 42-5 --

23         THE COURT: Okay.  When was this disclosed?

24         MR. YARBOROUGH:  Excuse me?

25         THE COURT:  When was this disclosed?

1              MR. YARBOROUGH:  On May 14th, 2025 to

2    creditors -- or to my client, MMWKM Advisors.

3              THE COURT:  May 14th, in what context?

4              MR. YARBOROUGH:  I asked for it.  I asked for

5    two things, Your Honor.  One of which I haven't received.  I

6    asked for the so-called separate property agreement that was

7    referenced in the May 4th, 2025 hearing transcript, which is

8    in your --

9              THE COURT:  In the May 4th --

10             MR. YARBOROUGH:  On May 14th, so last

11   Wednesday.

12             THE COURT:  Okay.  Sometimes you say April

13   4th, sometimes you say May 4th, and sometimes you say May

14   14th, so I'm just trying to clarify exactly which date we're

15   talking about.

16             MR. YARBOROUGH:  Certainly.  Of course, Your

17   Honor.

18             THE COURT:  On May 14th at what hearing?

19             MR. YARBOROUGH:  It was disclosed via email

20   from debtor's counsel.

21             THE COURT:  Okay.  So it was disclosed in an

22   email?

23             MR. YARBOROUGH:  Yes, Your Honor.

24             THE COURT:  But you actually requested it

25   when?

1          MR. YARBOROUGH:  So I requested it going all

2     the way back to Fall of 2023, Your Honor, in the underlying

3     case.  And so I didn't actually send any Rule 2004 discovery

4     in this case because I covered the waterfront post-judgment

5     discovery and the debtor provided -- provided, you know,

6     pretty voluminous discovery, so I assumed it was complete.

7     But it turns out the most important document of all, the

8     so-called marital property agreement drafted by debtor's

9     counsel, who is the same counsel in the underlying case, it

10    wasn't disclosed to me until May 14th.

11         But even more glaring, Your Honor, is that I asked

12    again and again and again, including last week, including on

13    May 14th, 2025 for the tax return filed by the Debtor

14    Dowdall, for the check from the IRS or the wiring information

15    from the IRS, and any documents showing the destination of

16    that tax refund.  Then the following day, on May 15th, 2025,

17    the creditor -- excuse me, the Trustee in this case, filed

18    his bombshell motion to approve settlement with Mrs. Dowdall.

19    That appears to indicate that Mrs. Dowdall is paying back

20    that refund.  And I inferred that that means that she

21    received the refund.  You know, evidence will show that, you

22    know, one way or another.  But what's clear from this case,

23    Your Honor, is that I asked for this marital property

24    agreement many times.  The Receiver in the underlying case --

25         THE COURT:  Okay.  Again, well, I'm not sure

1   you've answered my question.

2                    MR. YARBOROUGH:  Sure.

3                    THE COURT:  So you asked for this document in

4   the Fall of 2023.  That's pre-petition; is that correct?

5                    MR. YARBOROUGH:  That's right.

6                    THE COURT:  Okay.  Did you ask for it any time

7   post-petition?

8                    MR. YARBOROUGH:  So this is a matter of

9   dispute.  In the hearing --

10                   THE COURT:  Well, I'm sure he'll dispute it.

11  I'm just trying to understand your position.

12                   MR. YARBOROUGH:  My position is I asked about

13  it at the May 4th -- at the April 4th, 2025 Meeting of

14  Creditors.

15                   THE COURT:  At the 341 Meeting.

16                   MR. YARBOROUGH:  Yes.

17                   THE COURT:  Okay.

18                   MR. YARBOROUGH:  I asked about it.  The

19  Trustee got a commitment from debtor's counsel to produce it.

20  I never received it.  He only produced it to the Trustee,

21  apparently.  I expected to receive it, because I asked a lot

22  of questions about it.  Mr. Dowdall, Debtor Dowdall at that

23  April 4th, 2025 Meeting of Creditors testified that he wasn't

24  even sure whether he still had it or whether it existed.

25                   THE COURT:  This marital property agreement?

1          MR. YARBOROUGH:  It was called a separate

2  property agreement then.  I actually think of them as

3  possibly two documents.  But time will tell.

4          THE COURT:  Okay.

5          MR. YARBOROUGH:  So eventually I filed my

6  motion to extend.  Mr. Pronske said I never asked for the

7  marital property agreement.  Taking the position that if I

8  didn't ask for it by name, I never asked for it, including

9  the underlying case, including the Court's orders in the

10  underlying case.  Their failure to produce that in the

11  underlying case made me think it didn't -- something like

12  that wouldn't have existed.  Because I covered the waterfront

13  and, therefore, I trusted that what they did with the same

14  counsel in the underlying case, was fulsome.  Turns out it

15  wasn't.

16      Furthermore, Your Honor, they still haven't produced

17  any documents confirming the destination of the tax return,

18  which is estate property.  And it's critical.  So for all of

19  those reasons, Your Honor, I'm moving to extend the deadline

20  to file a 727 complaint against discharge.  I understand that

21  we're going to have an evidentiary hearing and we're going to

22  have witness testimony.  You may not grant my complaint, or

23  you may not sustain my objection.  But all I'm asking for,

24  Your Honor, is a chance.  I didn't know what I didn't know.

25  And I couldn't even ask for what didn't even exist, as far as

1   what I knew.  And so for that reason, Your Honor, I'm just

2   asking for an extension to the same deadline that the Trustee

3   obtained an unopposed extension from debtor's counsel.  And

4   that's why we're here today, Your Honor.

5               THE COURT:  Okay.  All right.  Mr. Pronske.

6               MR. PRONSKE:  Thank you, Your Honor.

7       Your Honor, the facts are very simple here.  And

8   they're not as they were just told to you.

9       The -- there was a 341 Meeting on April the 4th.  And

10  Mr. Yarborough went on for four pages of the transcript

11  asking about this marital property agreement.  Marital

12  property agreement, separate property agreement, it's the

13  same thing.  It's a marital property agreement that

14  identifies community property and separates the property.

15  It's a separate property agreement.

16      The reason that the word separate property agreement

17  was used is because that's what the Bankruptcy Trustee called

18  it at the 341 Meeting, which was April 4th, which was 20 days

19  before the deadline to file objections to discharge.

20      So on page 51 of the transcript Mr. Yarborough asks the

21  debtor, So I want to return to the separate property

22  agreement.  You never produced that agreement to the Receiver

23  in the underlying case.  And then he goes on on the next page

24  to say, Okay.  But you would agree with me.  Mr. Dowdall, it

25  is -- it's relevant to what collectible funds would be

1  whether you had a separate property agreement that would

2  cover your pay from WAM, which was his employer.  And then he

3  goes on on the next page -- all of these questions are about

4  the marital property agreement.  And th en the next page he

5  says, So monthly statements of Layla -- that's his wife --

6  Layla's separate bank accounts under the separate property

7  agreement would show how much he received from WAM, correct?

8        And then he goes on to say, So as you sit here today,

9  can you tell the Trustee and the creditors present here today

10  whether the separate property agreement addresses the

11  transfers of income to -- from WAM, or WAM?  And then he

12  asks, And can you confirm here on the record that you still

13  have a copy of the separate property agreement?

14        And so it's abundantly clear that Mr. Yarborough knew

15  about the separate property agreement on April the 4th, well

16  in advance of the deadline for fling.  It's also relevant

17  that -- and what we're getting at, Your Honor, is the law in

18  this area, as the Court knows because the Court's written two

19  opinions on this -- on this very topic, the Section 523

20  deadline in this case expired on March the 29th.  And that

21  Rule, which is Rule 4007 -- again, as the Court knows,

22  4007(c), as this Court knows because there's two written

23  opinions on it, says that the -- that an extension must be

24  filed before the deadline.  And that the Court has no power

25  to grant an extension after the deadline.

1      With respect to the 727 issues, the Rule is slightly

2 different.  It says that, in general that a motion to extend

3 must be filed before the deadline.  But there's an exception

4 given if you didn't know about those facts in time to file an

5 objection to discharge.

6      In this situation, Mr. Yarborough's raising two issues.

7 One, there was a separate property agreement that he -- and,

8 Your Honor, I'm -- I'm really troubled by his reply that he

9 files this morning when he says -- he says, On May 14th, 2025

10 Debtor Dowdall's attorney disclosed for the very first time a

11 marital property agreement whose name was never breathed in

12 this case, or the underlying case, not even once.  That

13 dramatic statement is just completely false.  He asked the

14 debtor six questions about this agreement on the -- at the

15 April 4th 341 Meeting.  So to say it was never breathed in

16 this case even once is just not true.  And that's also true

17 of the second fact that he raises regarding his tax refund.

18      Your Honor, he is claiming with, again, very dramatic

19 language he says, This is all big news.  But arguably the

20 plaintiff could have divined this from the -- we're talking

21 about the tax return -- from the testimony on April 4.

22 However, it's even worse than plaintiff anticipated.  Debtor

23 Dowdall not only inadvertently filed a tax return and

24 received money that the proverbial honest, but unfortunate

25 debtor would have sent to a Trustee.  Debtor Dowdall did what

1  even the most dishonest debtors would blanch at.  He secreted

2  away his tax refund to his wife.  A fact so obvious that the

3  Trustee acknowledged it in his settlement.

4      Again, that is completely false.  Here is what the

5  testimony says.  And it's on page 6 of the Creditor's

6  Meeting.  And, Your Honor, what you'll hear when I read this

7  testimony is not only is that false, but Mr. Dowdall

8  volunteered that he had -- was going to receive a tax refund,

9  not that he had received it.  And Mr. Weisbart asked him,

10  Have you received it yet?  And he says, No.  He hasn't even

11  gotten his tax return that this -- that the creditor says

12  he's secreted to his wife and, you know, that most debtors

13  would blanch at this horrible fact.  It's not even true.  He

14  hasn't even received it.  And here's the only testimony on

15  the tax refund.  He says -- and when he says he mis-stated

16  the amount, instead of saying 7,900 he said, 7,000, roughly.

17  And I'll read you the testimony.

18      He says, Okay.  This is Mr. Weisbart asking the

19  questions.  And Mr. Yarborough was there and participated in

20  this meeting, which is what makes this quite unbelievable.

21  He says -- Weisbart says, Have you prepared and filed your

22  '24 return?  The debtor says, Yes.  And actually I did that

23  inadvertently.  I didn't realize at the time of it, so I'm

24  actually -- will have a refund for the 2024 tax return that

25  I'm going to have to account for, you know, and to apply

1   toward the creditors.  And Weisbart says, What's the amount
2   of the refund?  And he says, It's roughly $7,000.  And then
3   Weisbart says, And have you receive it yet, or -- and the
4   debtor says, No.  And then he says -- and then Mr. Weisbart
5   says, Okay.  Well, you'll need to turn that over when  you
6   get it.  And the debtor says, I understand.  And that's the
7   only statement, the only testimony about this refund.  And
8   somehow this -- the creditor's attorney has turned us into
9   the worst fact, you know, in history in this case.  And it's
10  just not true.
11       So regarding -- you know, to tie this back into what
12  the Bankruptcy Rules say, there are two facts that he's
13  alleging today that give him, he thinks, the right for an
14  extension.  And one -- and they both relate to he didn't know
15  these facts.  Well, that's just not true.  He knew about the
16  tax refund on April the 4th, 20 days before the bankruptcy --
17  before the deadline.  And he knew about the marital property
18  agreement 20 days before the petition was due.
19       Now, another fact that's highly irrelevant to this
20  situation is he did file a complaint under Section 523 and
21  727.  The problem is he filed it the day after the deadline.
22  In fact, he really, to be completely precise, he filed it 7
23  minutes and 50 seconds after midnight.  And so to say he
24  didn't know about these facts is just not true, unless he
25  learned about them between midnight and 12:07 a.m. in the

1  morning.  Because he filed a complaint, even though it was
2  late filed.
3       So I apologize for getting worked up, Your Honor, but I
4  really am worked up about this because I don't think -- I
5  don't think there's honesty going on here.  And I -- it's
6  troubling to me.  And the facts very simply applied to the
7  law are that Mr. Yarborough knew about -- oh, and I want to
8  say one other thing.  At the 341 Meeting, Mr. Weisbart said
9  to me, Will you turn over this marital property agreement?
10 And I said, I'll have it to you this afternoon.  And so that
11 afternoon I -- Mr. Weisbart and I have known each other 42
12 years and we're friends.  And I wrote him an email in the
13 afternoon and I said, I'm working from home today and it's up
14 at my office.  Can I get it to you on Monday?  And he said,
15 No problem.
16      So I actually emailed it to him on Tuesday.  So I guess
17 I was a day late.  But Mr. Yarborough never asked for it at
18 that 341 Meeting.  He was sitting right there when
19 Mr. Weisbart said, Will you send it to me?  And I said, Yes.
20 And I did what I said I was going to do.  And if
21  Mr. Yarborough had asked me for it, I would have sent it to
22 him, too.  In fact, May 14th he sent me an email and he said,
23 Will you send me this document?  And I sent it to him, it was
24 either that day or the next day.
25      So there's -- again, going back to the Rule.  Under

1 Section 523 the deadline expired -- was expired for a month

2 and the law as written by Your Honor is that the 523 deadline

3 cannot be extended, unless there's a motion filed before the

4 deadline.  This was a month late.  So those claims should be

5 dismissed.  And I -- I have filed a motion to dismiss this

6 adversary proceeding under Rule 12(b)(6) which this Court

7 says is the right avenue to go to when it's -- when it's late

8 filed.  And I've also --

9             THE COURT:  But that's before Judge Searcy,

10 right, not here?

11            MR. PRONSKE:  I'm sorry?

12            THE COURT:  That's before Judge Searcy in the

13 discharge or dischargeability litigation?  Or what do you

14 mean a 12(b)(6) motion?

15            MR. PRONSKE:  The adversary, I think, is

16 pending before Judge Searcy.  So it is -- yeah, it is filed

17 in front of Judge Searcy.  But I have filed a 12(b)(6) under

18 Section 523 and under Section 727 because they can't meet the

19 test under 727 either because these facts were 100 percent

20 known with no diligence by counsel 20 days before the

21 petition.  And he, in fact, did file a complaint which proves

22 that he knew that these issues -- so, Your Honor, I ask that

23 this motion be denied.

24            MR. YARBOROUGH:  Your Honor, may I briefly

25 respond to just a couple of kind of factual assertions?

1                    THE COURT:  Well, in a moment.  I want you to

2    respond to my questions first, okay?

3                    MR. YARBOROUGH:  Of course.

4                    THE COURT:  What was the deadline for

5    extending the -- oh, I'm sorry.  What was the deadline for

6    filing 523 complaints in this case?

7                    MR. YARBOROUGH:  It was in March of 2025.  And

8    I don't dispute that I missed that deadline.

9                    THE COURT:  Okay.

10                   MR. YARBOROUGH:  And I didn't even file a

11   motion to extend that deadline, Your Honor.

12                   THE COURT:  Okay.  So you don't dispute --

13                   MR. YARBOROUGH:  So I don't know why he's

14   bringing that up.

15                   THE COURT:  -- that the motion was filed after

16   the deadline had expired?

17                   MR. YARBOROUGH:  Yes.  So --

18                   THE COURT:  523.

19                   MR. YARBOROUGH:  Yes.  The 523 --

20                   THE COURT:  Stop right there.  So the answer's

21   yes?

22                    MR. YARBOROUGH:  That's correct, Your Honor,

23   yes.

24                    THE COURT:  Okay.  And you don't dispute that

25   the motion to extend the deadline was filed after the 727

 1  deadline had already expired?

 2              MR. YARBOROUGH:  Yes, Your Honor.  And I filed

 3  it under Rule 4004(b)(2), which allows for a filing when

 4  there's grounds under 727(d) --

 5              THE COURT:  400 what?

 6              MR. YARBOROUGH:  Bankruptcy Rule 4004(b)(2).

 7              THE COURT:  Okay, 4004.  That's the 727,

 8  right?

 9              MR. YARBOROUGH:  Yes, Your Honor.  And I

10  didn't even try to extend the 523, because I play by the

11  rules.  You know, once I realize I'm wrong, I'm not going

12  to --

13              THE COURT:  Okay.  Hold on.  So you're not

14  seeking an extension of 523?

15              MR. YARBOROUGH:  That's correct, Your Honor.

16              THE COURT:  Although you filed a complaint

17  under 523 after the deadline; is that right?

18              MR. YARBOROUGH:  That's right.  So what I'm

19  asking, Your Honor, is just to file on the fraudulent

20  transfer issues under 727.

21              THE COURT:  Under 727.  Okay.  Hold on.

22              MR. YARBOROUGH:  And just to be very clear.

23  There's this one key thing that I think Your Honor would

24  appreciate knowing.  None of the facts that I bring up in

25  this hearing, or in my motion papers asking for an extension

                    CINDY SUMNER, CSR (214) 802-7196

1  under 4004(b)(2) are in the complaint I filed 7 minutes late

2  on April 25th, 2025 at 12:07 a.m.

3                  THE COURT:  Okay.  So, again --

4                  MR. YARBOROUGH:  That's --

5                  THE COURT:  Hold on.

6      So the 727 complaint was filed 7 minutes after the

7  deadline for filing 727 complaints had expired; is that

8  right?  Do the parties agree that that is a fact?

9                  MR. YARBOROUGH:  Yes, that's right.

10                 THE COURT:  Okay.  And you agree, as well,

11 Mr. Pronske?

12                 MR. PRONSKE:  7 minutes and 50 seconds to be

13 exact, yeah.

14                 THE COURT:  Okay.  Less than 8 minutes.  Okay.

15 Just to be precise -- or more precise.

16                 MR. YARBOROUGH:  And, Your Honor, just to be

17 very clear, what I'm asking for is I'm asking for the right

18 to file a complaint regarding the dischargeability issue that

19 I learned about last week, which is that they understated the

20 tax refund and that they had this marital property agreement,

21 which they should have produced in the underlying litigation.

22 And because they didn't, I didn't file a Rule 4 -- excuse me,

23 2004 discovery.  And so basically they haven't played fair

24 and I need a chance to litigate my case.  I may not win the

25 case.  I understand it's an uphill battle to win an objection

1   to discharge.  But I at least deserve my day in court.

2           THE COURT:  Okay.  Let me stop you, okay,

3   because I have other hearings today, as well.  So let me kind

4   of get to where we are, okay.

5           MR. YARBOROUGH:  Of course.  And I think

6   Mr. Pronske wants to call me as a witness, so I might need to

7   come back.

8           THE COURT:  Okay.  So you are acknowledging

9   you're not seeking an extension of the 523 deadline today; is

10   that correct?

11           MR. YARBOROUGH:  Yes, Your Honor.

12           THE COURT:  Okay.  So we're only looking at

13   727.

14           MR. YARBOROUGH:  Correct.

15           THE COURT:  As to the 727 deadline, the Court

16   agrees in principle that parties should have an opportunity

17   to bring their claims before the Court and should have fair

18   notice, okay.  But it looks like here you did know there was

19   an agreement, whatever the title of that document may be.

20   And you knew that that agreement had not been produced by

21   whenever you think you needed that document.  And you knew in

22   advance of the 727 deadline about this document, because

23   you're saying it was -- it was -- I'm sorry, that it was

24   discussed in the Creditor's Meeting.  Which is exactly why

25   the deadlines are triggered off of the 341 Meeting.  So you

1  knew there was a document, you just didn't know what

2  document.  You knew you didn't get whatever that document

3  was.  But you weren't proactive in getting -- in seeking to

4  get it from the Trustee or otherwise.

5           MR. YARBOROUGH:  Your Honor, I disagree.

6  Because I asked questions about it at that hearing.

7           THE COURT:  I understand you asked questions.

8  But you also knew --

9           MR. YARBOROUGH:  Mr. Pronske said he'd produce

10  it and he didn't produce it --

11          THE COURT:  -- you did not get the document.

12  You knew you didn't have the document in time to file your

13  complaint.  So you should have sought an extension of the

14  deadline before the complaint deadline expired, or you should

15  have sought copies of that and been more proactive.  My point

16  is, you knew at the Creditor's Meeting there was a document,

17  whatever the title of that document is, that provided some

18  kind of property, division or otherwise, regarding community

19  property.  You knew that at the 341 Meeting.  There's no

20  dispute you knew that.  So you did have a fair opportunity.

21  The fact that the debtor did not produce that document fast

22  enough to you while it was produced to the Trustee is an

23  issue for you.  You should have taken more steps, other than

24  saying, I requested, deadlines are expiring and, oh, if the

25  deadline expires without me getting it timely, then it's not

1  fair.  The point is, it is fair because you knew.  Okay.

2              MR. YARBOROUGH:  Your Honor, but there's only

3  one --

4              THE COURT:  That's my ruling.  That is my

5  ruling.

6              MR. YARBOROUGH:  But, Judge, I have one more

7  thing to add, if you don't mind.

8              THE COURT:  So the issue before the Court

9  is --

10             MR. YARBOROUGH:  The separate property

11  agreement is not even what I'm going to file in the

12  complaint.  It's all about the tax refund which I could --

13             THE COURT:  The tax refund.  Okay.  Let's talk

14  about the tax refund.

15             MR. YARBOROUGH:  -- oppose the discharge on

16  that basis alone.  And that's the main reason.  That's the

17  reason why discharge will eventually get denied in this case,

18  because the tax refund, you can't unring the bell.  If they

19  did something that they shouldn't have done with the tax

20  refund, then they can't get a discharge.  And that's what we

21  need to have an evidentiary hearing about.

22             THE COURT:  Okay.  So now you're limiting the

23  727 objection to the failure to disclose -- the --

24             MR. YARBOROUGH:  Assets, yes.  Failure to

25  disclose assets.  Not this -- not the non production.  THat's

1  a discovery issue.  I understand your take on that.

2              THE COURT:  Okay.

3              MR. YARBOROUGH:  But it's really about not

4  disclosing all the assets.  And there's uncontested --

5              THE COURT:  Disclosing the asset or taking the

6  asset?

7              MR. YARBOROUGH:  It's -- it's the matter of

8  what happened to that asset.  And we need an evidentiary

9  hearing on that matter.  I'm happy to, you know, set this for

10  another day to have an evidentiary hearing on the matter.

11              THE COURT:  We're not setting it for another

12  day.

13              MR. YARBOROUGH:  So that's the principal

14  issue.  And that's what the complaint would be about.  So

15  that's the only thing --

16              THE COURT:  So the complaint is about the

17  debtor --

18              MR. YARBOROUGH:  The debtor filed a tax refund

19  inadvertently behind the Trustee's back which he reluctantly

20  admitted at the April 4th hearing.  Understated the amount of

21  the refund and didn't -- and I asked Mr. Pronske last week on

22  April -- on May 14th, 2025 multiple times, give me the

23  documents of the tax refund and how it was -- where its

24  destination was.  And he didn't give it to me, because they

25  have something to hide, Your Honor.  And the reason is, I

 1  think that's going to be the reason you deny discharge in

 2  this case.  And I think --

 3                THE COURT:  How much is the amount of -- just

 4  so I understand sort of the practicalities of this case, how

 5  much is the amount of your claim against the debtor?

 6                MR. YARBOROUGH:  $3.4 million.

 7                THE COURT:  Okay.  And this is a business

 8  debt; is that right?

 9                MR. YARBOROUGH:  It's a breach of fiduciary

10  duty lawsuit that we won.

11                THE COURT:  Arising out of the business

12  relationship between --

13                MR. YARBOROUGH:  Correct.

14                THE COURT:  -- Mr. -- I'm sorry, Mr. Dowdall

15  and your client; is that right?

16                MR. YARBOROUGH:  That's exactly right.

17                THE COURT:  Okay.  So --

18                MR. YARBOROUGH:  Basically the reason we're

19  doing this is because failure to disclose assets supports

20  revocation of discharge, including under the McNally case for

21  failing to disclose a tax refund.  That said -- failure to

22  disclose and turn over a tax refund.  That said, Your Honor,

23  that's a matter for the discharge hearing, not today.  Today

24  all I'm asking for is just --

25                THE COURT:  No.  It's a matter for this

1  motion, because this motion requires the Court to determine

2  whether or not that would constitute cause for revocation of

3  a discharge.

4          MR. YARBOROUGH:  And it's black letter law

5  that it does.  It's actually cited in a book written by Mr.

6  Pronske who is an excellent attorney in bankruptcy.  He

7  actually wrote the book and I cited it in my reply brief.

8  It's the last thing in the brief, the last paragraph.  He's

9  right.  McNally says that this is grounds for revocation of

10  discharge.  Therefore, it's grounds for extending the

11  deadline for 727 complaint objecting to dischargeability.

12  It's black letter law.  It's literally cited in a book

13  written by Mr. Pronske who admittedly is an expert in the

14  matter.

15          THE COURT:  Okay.  Thank you.

16     Mr. Pronske, I guess you want to thank him for making

17  you the expert and acknowledging your expertise and

18  publishing your treatise.

19     But let's talk about your response to that.

20          MR. PRONSKE:  Yeah.  So my response is simple,

21  Your Honor.  Which is that the debtor called me some days

22  prior to the Creditor's Meeting and told me he had filed a

23  tax refund.  And he said, what do I do with the refund?  I

24  go, you can't keep that.  You've got to give it to the

25  Trustee, obviously.  And so -- and I said, when we go to this

1   Creditor's Meeting, you need to tell the Trustee that you're

2   getting a refund.  And so there was not a question pending

3   about a refund.  And the debtor told the Trustee in the

4   transcript he said, Yes.  And I actually did that

5   inadvertently.  I didn't realize the timing of it.  So I

6   actually have a refund for the '24 tax return that I'm going

7   to have to account for, you know, to apply toward the

8   creditors.  And then what is the amount of the refund?  He

9   says, It's roughly $7,000.  He didn't have it in front of

10  him.  And then the question is, All right.  Have you received

11  it yet or -- and the answer is, No.  And the question is,

12  Well, you're going to need to turn that over when you get it.

13         So this was totally volunteered by the debtor.  And the

14  debtor said he'll give the money to the Trustee.  And in

15  fact, Your Honor, there is a compromise and settlement

16  agreement that is -- that is filed by the Trustee where it

17  specifically addresses the refund and when he receives it, he

18  is to give it to the Trustee.  There's no issue here.

19              MR. YARBOROUGH:  That's not what it says, Your

20  Honor.  And by the way, his testimony --

21              MR. PRONSKE:  That is what it says.

22              MR. YARBOROUGH:  His speaking on the record,

23  although he is an honorable member of this Bar, isn't

24  testimony.  I've met my burden by a preponderance of the

25  evidence, period, end of story, by uncontested facts.

1                    THE COURT:  Thank you.

2                    MR. YARBOROUGH:  They've got --

3                    THE COURT:  Okay.  The uncontested fact, I

4    believe, is that the debtor disclose the tax refund --

5    disclosed the fact that, one, the debtor had filed a tax

6    refund post-petition prior to the 341 Meeting.  The reason

7    I'm pretty certain of that is the docket reflects this case

8    was filed in December 2024 at a time the tax returns would

9    have not -- would not have been due  yet.  And prior to the

10   341 Meeting, the debtor acknowledged at the 341 Meeting that

11   the tax refund was -- the tax return was filed.  That is an

12   uncontested fact; is that correct?

13                   MR. YARBOROUGH:  Your Honor, it's uncontested

14   that they didn't amend their schedules --

15                   THE COURT:  Is that correct?

16                   MR. YARBOROUGH:  Well --

17                   THE COURT:  Is it -- is it correct that the

18   debtor acknowledged and disclosed on the record at the 341

19   Meeting that the debtor had filed the 2024 tax returns

20   post-bankruptcy?

21                   MR. YARBOROUGH:  That specific fact, of

22   course.

23                   THE COURT:  Okay.

24                   MR. YARBOROUGH:  And that's in your record.

25                   THE COURT:  Okay.

```
 1              MR. YARBOROUGH:  But it's also uncontested
 2    they didn't amend their schedules.  They didn't turn it over
 3    to the Trustee.  And now they've entered a settlement
 4    agreement which you can read yourself.  It's in the record.
 5              THE COURT:  Okay.  How many of you represent
 6    debtors in bankruptcy at any point in time; Chapter 7,
 7    Chapter 11, Chapter 13?  All of the lawyers here, raise your
 8    hand.
 9         Okay.  Every single lawyer here.  Are you a lawyer?
10    No.  Okay.  So every single lawyer here.
11         How many of you have amended the schedules
12    post-petition to reflect that a tax -- a post-petition tax
13    return was due for the prior tax year?  Two, three.  Okay.
14         Is that done every single time post-petition?  Okay.
15              MR. YARBOROUGH:  So, Your Honor --
16              THE COURT:  My point is, I can tell you in my
17    22 years on the Bankruptcy Bench that a post-petition tax
18    return is sometimes specifically disclosed on schedules,
19    sometimes specifically disclosed to the Trustee.  It's not
20    always done as an amended schedule when it's disclosed.  So
21    you're saying that it's a 727 -- it was cause to revoke a 727
22    discharge because the debtor did not amend the schedule to
23    reflect that there was a refund due for the prior tax year?
24              MR. YARBOROUGH:  Judge, the issue is not that
25    there was some paperwork issue.  The issue is they didn't
```

1    disclose one of the biggest assets they had, which is some

2    cash.

3              THE COURT:  At what point in time?

4              MR. YARBOROUGH:  They didn't disclose it

5    until -- last week I find out on Thursday there's a motion to

6    approve a settlement -- which, by the way, I wasn't consulted

7    about.  I would have out-bid that settlement agreement, which

8    you'll hear about later.  But regardless, the Trustee entered

9    a settlement where money comes from the debtor's wife into

10   the estate, including an amount equal to the tax refund,

11   which was understated on the record.  It not only was

12   understated, it wasn't amended.  It wasn't produced to me.  I

13   asked for all kinds of documents in the underlying case.  I

14   assumed that they produced it.  They didn't play fair, Your

15   Honor.  That's the reason why we should be able to proceed

16   with our case, have an evidentiary hearing.  You may wind up

17   denying the discharge.  You may wind up granting the

18   discharge.

19        But in any event we deserve to have our day in court

20   about the matters that were not disclosed to us until last

21   week.  It's simply not fair.  And there's only -- the only

22   evidence in this record, Your Honor, is what I've put in.

23   And I've met my burden by a preponderance of the evidence.

24   And it's up to you at a later hearing when Mr. Pronske

25   actually calls witnesses and submits testimony, which he

1  hasn't done, to dispute all of that.  But I've met my burden

2  today and I'm entitled to an extension of one week, the same

3  extension the Trustee got.  The same extension that they gave

4  the Trustee.  There's no prejudice here.  The Trustee could

5  do the same thing.

6            THE COURT:  Do you think that's the standard?

7            MR. YARBOROUGH:  The standard, Your Honor, is

8  McNally.  McNally is black letter law cited in one of the

9  leading treatises in Texas on bankruptcy law that happened to

10  be written by my esteem colleague across the aisle.  Under

11  bankruptcy law if you receive -- it doesn't matter if it's

12  $8,000, Your Honor, or $800,000, if you receive a tax return,

13  don't disclose it, and then ask for a discharge, you're not

14  entitled to it.  It at least raises the issue that should be

15  submitted to an evidentiary hearing.

16     And, Your Honor, you'll find out that the assets were

17  not properly disclosed in this case.  And this --

18            THE COURT:  You're talking about the tax

19  return, tax refund for the prior year.

20            MR. YARBOROUGH:  Your Honor, the tax refund of

21  the prior year is connected to the income of the prior year

22  which we don't have, which actually wound up getting paid to

23  Mr. Dowdall.  That is just the tip of the iceberg.  The tax

24  return, which they won't give me, even though I asked for

25  it -- they gave me the marital property agreement, because

1   that says stuff that they like.  They didn't give me the tax

2   return, because it's just the tip of the iceberg, Judge, of

3   assets and income that was actually received by a third

4   party, not the debtor, that the debtor nevertheless received

5   a tax refund for.  And nevertheless only disclosed in passing

6   at the Rule 404 hearing.  I don't dispute -- you know, what

7   Mr. Pronske said to his client, I don't dispute.  It's not

8   evidence, of course.  And it shouldn't be considered by Your

9   Honor.  But it doesn't really matter.  What matters is, they

10  didn't play ball.  They didn't play fair.  They didn't do

11  what they should have done.  And, therefore, they don't

12  deserve the immense privilege of taking advantage of the

13  Bankruptcy Code under 404(b)(2).

14      This is brand new information we found out over two

15  weeks after the 727 deadline.  And that's, Your Honor, why

16  you should grant this motion.  And then you can overrule or

17  sustain my objection to discharge at a later date when we

18  actually have a more fulsome hearing with all of the evidence

19  and witnesses necessary.

20      I simply don't know what I don't know.  And assets in

21  the bankruptcy are simply in question because they won't

22  produce the tax return.  And they're trying to run out the

23  clock and Your Honor shouldn't let them.  We need one more

24  week and we'll file our complaint narrowly focused on the

25  assets issue, Your Honor, which you'll have another chance to

1  consider and sustain or overrule.

2             MR. PRONSKE:  May I briefly respond, Your

3  Honor?

4             THE COURT:  Yes, Mr. Pronske.

5             MR. PRONSKE:  The --  it's clear from the

6  Creditor's Meeting testimony that Mr. Dowdall has not

7  received a tax refund.  And to this day he has not received

8  the tax refund from the government.  He filed his tax return,

9  like any responsible person would do, in April of the

10  following year.  He's a financial advisor and very

11  responsible person.  And hasn't received a tax return.

12      There's no evidence before the Court that he has

13  received it and done all of these horrible things; giving it

14  to his wife that other debtors would be shameful of.  That

15  just didn't happen.  And there's no testimony before the

16  Court on that.

17      But the more important issue, just to say it succinctly,

18  Your Honor, is that the Rule requires -- Rule 4004(b)(2)

19  requires that at the time that the deadline expired, you

20  didn't know about these facts.  He knew about the tax refund

21  20 days before the deadline expired.  And, in fact, filed a

22  complaint.  And so -- and --

23             THE COURT:  Well, he filed a complaint late.

24             MR. PRONSKE:  He filed it late.  But --

25             MR. YARBOROUGH:  But it didn't address -- it

1   didn't address the tax refund issue, just to be clear.

2              MR. PRONSKE:  But he knew about the tax

3   refund, because it was testified to at the Creditor's

4   Meeting.  And what is important about the fact that he filed

5   a complaint is that he had facts and he filed a complaint.

6   He just did it too late.  For whatever reason, he just didn't

7   do it right.  And that's -- the Rule says, if you know -- if

8   you know about the facts, you can't get an extension.  And

9   the law's very, very clear on that.  The Rule specifically

10  says that.

11             THE COURT:  Okay.

12             MR. YARBOROUGH:  We still don't know the

13  facts.  The most clear thing today is that he has not --

14  he's basically trying to testify.  He can't meet any burden.

15  He hasn't submitted any evidence.  I submitted evidence.  I

16  met my burden.  I'm entitled to an extension.  And what he's

17  saying right now is basically conjecture and assumptions.  I

18  bet, Your Honor, I'm saying it right now and I predict this

19  will be true, Mr. Dow -- Mr. Pronske said Mr. Dowdall filed

20  his tax returns in April like any responsible person would.

21  I bet he didn't.  I bet he filed at some other point.  He

22  just assumed that and he wants you to assume the same thing.

23       I came to court with evidence, Exhibits 1 through 6 to

24  my reply.  I came to court with, you know, meeting my burden.

25  And it's simply not fair for them to say, oh, well, you know,

CINDY SUMNER, CSR (214) 802-7196

1  you made some other mistake that's completely not before the

2  Court today.  I opened my adversary case, I think before the

3  deadline.  I'll have to look at my emails.  But then I

4  flubbed and filed it a little bit late when I was preparing

5  for a trial the following Monday in a commercial case which

6  is what my bread and butter is.  I'm not asking for any

7  special exceptions.  I'm not asking for any help.  I'm

8  entitled to this full stop.  They are looking for a win by

9  forfeit, but they're not entitled to it because I've met my

10  burden.  They haven't submitted any evidence.  There's a lot

11  of talk, but no evidence.  And, therefore, you must enter

12  this order.  And it's up to you later what you think of the

13  evidence and the testimony that's presented in the complaint

14  regarding dischargeability.

15            THE COURT:  All right.  As acknowledged by the

16  movant on the record today, this is a motion solely under

17  Rule 4004(b)(2), which is -- which provides that after the

18  time to object has expired and before discharge is granted, a

19  party in interest may file a motion to extend the time if, A,

20  the objection is based on fact that if learned after the

21  discharge is granted, would provide a basis for revocation

22  under 727(d).  B, the movant did not know these facts in time

23  to object.  And, C, the movant files the motion promptly

24  after learning about them.

25            As to (b)(2)(A), whether the debtor -- whether the

 1  objection is based on facts that if learned after the

 2  discharge is granted would provide a basis for revocation, as

 3  acknowledged by the parties on the record, McNally stands for

 4  the proposition that a -- that a discharge can be revoked if

 5  the debtor fails to disclose a tax refund post-petition.  But

 6  the facts here -- so it is based on that fact, alleged fact.

 7        However, the uncontested facts by the movant in the

 8  movant's own brief shows that the debtor disclosed the

 9  existence -- the filing of the tax returns and the existence

10  of a tax refund on the record at the 341 Meeting.  So the

11  facts here are fundamentally different from the McNally case.

12  Here the issue is if the debtor disclosed the existence of a

13  tax refund and the filing post-petition of the tax return at

14  the 341 Meeting, would that constitute grounds for revocation

15  of discharge because the ultimate refund wound up being a

16  little bit more than $900 more than the amount disclosed on

17  the record?  And, again, and in this case as a matter of law,

18  the Court finds that that would not constitute grounds for

19  revocation.

20        In addition, as to 4004(b)(2)(B), whether the movant

21  had -- did not know of those facts in time to object, the

22  Court finds that based on the movant's own briefs, which

23  shows that the debtor disclosed the existence of a tax refund

24  at the 341 Meeting.  The debtor did disclose those facts in

25  time for the movant to file a discharge complaint.  So the

1  movant has failed to meet (b)(2)(B), as well.

2      And then the third factor, whether the movant filed the

3  motion promptly after learning about them, the Court finds

4  that in this case, the movant did not, based on the facts as

5  alleged by the movant.  The fact of the existence of the tax

6  return and the debtors, "inadvertent" filing of the -- the

7  debtor's asserted inadvertent filing of the tax return

8  post-petition and the amount of the tax return were all

9  disclosed prior to the 727 discharge deadline.

10     The movant did not seek an extension of the deadline,

11  notwithstanding the fact that they -- the facts were

12  disclosed before the deadline had expired.  Instead, the

13  debtor -- the movant waited until after the deadline had

14  expired to file the motion.  And for all those reasons, the

15  Court finds that the movant has failed to meet any one of the

16  three factors, each of which were necessary to grant a motion

17  to extend a deadline under 727 after the deadline had

18  expired.

19     So, Mr. Pronske, you'll submit an order to the Court

20  consistent with the Court's ruling denying the motion.

21             MR. PRONSKE:  Thank you.

22             MR. YARBOROUGH:  Your Honor, may I move to

23  reconsider the April 4th, 2025 Meeting of Creditor's --

24             THE COURT:  No.

25             MR. YARBOROUGH:  The transcript wasn't even

CINDY SUMNER, CSR (214) 802-7196

1    issued until April 30th, 2025.

2              THE COURT:  You attended the 341 Meeting,

3    right?

4              MR. YARBOROUGH:  I did.

5              THE COURT:  Is there any --

6              MR. YARBOROUGH:  And I had a trial set the

7    following Monday.

8              THE COURT:  Your motion is --

9              MR. YARBOROUGH:  So it's reasonable for me to

10   take as long as --

11             THE COURT:  I'm not taking up a motion to

12   reconsider today.  If you want to file something later, I'll

13   hear you on a motion.  But today I have ruled.

14        Mr. Pronske, upload the order, please.

15        Parties are excused.

16             MR. PRONSKE:  Thank you, Your Honor.

17             MR. YARBOROUGH:  Thank you, Your Honor.

18                  (End of Proceedings.)

19

20

21

22

23

24

25


                    CINDY SUMNER, CSR (214) 802-7196

1        <u>C E R T I F I C A T E</u>

2            I, CINDY SUMNER, do hereby certify that the

3    foregoing constitutes a full, true, and complete

4    transcription of the proceedings as heretofore set forth in

5    the above-captioned and numbered cause in typewriting before

6    me.

7

8

9

10

11

12

13

14

15                         _____

16                         CINDY SUMNER, CSR #5832
                           Expires 10-31-2026
17                         Cindy Sumner, CSR
                           5001 Vineyard Lane
18                         McKinney, Texas 75070
                           214 802-7196
19

20

21

22

23

24

25


                    CINDY SUMNER, CSR (214) 802-7196